```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

ANDREW R. LOFTON,

                 Plaintiff,           17-CV-6459 (MAT)
           -v-                        **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                 Defendant.
_____
```

## INTRODUCTION

Andrew R. Lofton ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383©. Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted to the extent that the matter is remanded solely for calculation payment of benefits, and Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On July 25, 2013, Plaintiff protectively filed for DIB and SSI, alleging disability beginning March 15, 2013. Administrative

Transcript ("T.") 211-18. The claim was initially denied on July 27, 2015, and Plaintiff timely requested a hearing. T. 121-57. A hearing was conducted on July 29, 2015, in Rochester, New York by administrative law judge ("ALJ") Connor O'Brien. T. 34-90. Plaintiff appeared with his attorney and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on February 22, 2016. T. 14-33. Plaintiff timely requested review of the ALJ's decision by the Appeals' Council. T. 7-13. The Appeals Council denied Plaintiff's request for review on May 15, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 19.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: chronic pain syndrome, gout, lumbago, bipolar disorder, anxiety disorder, post-traumatic stress disorder, cannabis dependence, and allergies. *Id.* The ALJ also determined that Plaintiff's history of cocaine and alcohol abuse, in remission, considered singularly and in combination with

2

Plaintiff's other impairments, was non-severe and created no significant work-related functional limitations. T. 19-20. Plaintiff's history of a twisted ankle in May 2013 was also determined to be non-severe. T. 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.04, 12.04, 12.06, and 12.09. *Id*.

Before proceeding to step four, the ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the additional limitations: occasionally lift 20 pounds; never lift more than 10 pounds with the left non-dominant hand alone; a sit/stand option that allows the change of positions every 60 minutes for up to 5 minutes without leaving the workstation; frequently push, pull, handle, finger, and feel with the left non-dominant hand; adjust to occasional changes in the work setting; occasionally interact with the public; never perform teamwork; occasionally make work-related decisions; work to meet daily goals, but not maintain an hourly, machine-driven assembly lime production rate; and allowed up to three additional short (less than 5 minute) breaks beyond normal scheduled breaks. T. 22. At step four, based on the VE's testimony, the ALJ concluded that

3

Plaintiff had past relevant work as a property manager, commercial cleaner, heavy truck driver, merchandise deliverer, and a hand packager, but that Plaintiff was unable to perform them as they are actually and generally performed in the national economy with his current RFC. T. 27.

At step five, the ALJ relied on the VE's testimony that a person of Plaintiff's age, and with his education, work experience, and RFC, could perform the requirements of the following representative jobs that exist in the significant numbers in the national economy: Housekeeper/Cleaner (Dictionary of Occupational Titles ("DOT") No. 323.687-014, unskilled, SVP 2, light exertional level); Mail Clerk (DOT No. 209.687-026, unskilled, SVP 2, light exertional level); and Small Products Assembler (DOT No. 706.684-022, unskilled, SVP 2, light exertional level). T. 28.

At step five, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since the application date. *Id.*

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact,

provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ erred in affording less than controlling weight to the opinion of Plaintiff's treating physician, Dr. Elizabeth Brown; (2) the ALJ erred in failing to consider or weigh the opinion of consultative examiner Dr. Christine Ransom; (3) the ALJ's physical RFC finding is unsupported by medical opinion; and (4) the ALJ failed to apply the appropriate legal standard in assessing Plaintiff's credibility. For the reasons discussed below, the Court agrees with Plaintiff that, under the

5

applicable regulations, the ALJ was required to afford controlling weight to Dr. Brown's opinion. Moreover, because Dr. Brown's opinion establishes that Plaintiff suffers from disabling limitations, remand of this matter solely for calculation and payment of benefits is warranted.

**I.  Evaluation of Dr. Brown's Opinion**

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and

6

laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

Plaintiff's primary care physician, Dr. Brown, completed a Medical Source Opinion Questionnaire on September 16, 2015. At the time of the source statement, Dr. Brown reported she had been treating Plaintiff every one to two months for the past two years and Plaintiff's diagnoses were back pain, bipolar disorder, alcohol abuse, hand pain, and post traumatic stress disorder. T. 629. Dr. Brown reported Plaintiff suffered from daily back pain with severity ranging from 2-3 up to 10 on a scale of 1 to 10, with pain worsening with activity and lifting. Plaintiff also suffered from pain and edema in his left hand 3 to 4 times a week, with pain at 7-8 on a scale of 1 to 10. She opined these impairments had lasted or could be expected to last at least twelve months and that Plaintiff's pain would constantly interfere with his attention and

7

concentration needed to perform even simple work tasks. T. 629. Dr. Brown opined Plaintiff would be able to lift and carry 20 pounds occasionally (6% to 33% of an 8-hour working day) and never lift or carry 50 pounds. Furthermore, she opined Plaintiff would never be able to twist, crouch, squat, or climb ladders but he could occasionally stoop, bend, and climb stairs. *Id.* Per Dr. Brown, Plaintiff would be able to sit for about four hours total in an eight-hour working day and stand or walk for four hours total as well. She opined that Plaintiff could sit for forty-five minutes to an hour and stand for up to an hour at any one time. T. 630. Finally, Dr. Brown opined pain significantly impaired Plaintiff's daily functioning and that his impairments would cause him to be absent from work for more than four days per month. *Id.*

In her decision, the ALJ gave "partial weight" to Dr. Brown's opinion. T. 24. In particular, the ALJ gave "some weight to the portion of the opinion that limits [Plaintiff] to light exertional work" but "[l]ittle weight to the remainder of the opinion," including Dr. Brown's finding that Plaintiff would be absent from work more than four days per month. *Id*. The ALJ stated without elaboration that the non-exertional limitations identified in Dr. Brown's opinion were "generally inconsistent with the objective clinical findings, diagnostic findings, and with [Plaintiff's] own reported activities of daily living." *Id*.

8

The ALJ's reasons for discounting portions of Dr. Brown's opinion are unsupported by the record. First, the ALJ failed to explain how Dr. Brown's opinion was allegedly inconsistent with Plaintiff's self-reported activities of daily living. Plaintiff testified that he suffers from manic episodes on a weekly basis, during which he has racing thoughts, obsessive compulsive tendencies, and is unable to stay still. His awareness of his manic state leads to anxiety, which then leads into panic attacks that can last 10 to 12 hours at a time. After the panic attacks subside, Plaintiff testified it is difficult for him to get up. He testified that he barely has the energy to care for his young son during these episodes and that "everything else goes to the wayside". T. 75-76. Furthermore, the Seroquel Plaintiff takes for his anxiety "really sedates" him. T. 77.

In addition to Plaintiff's weekly bipolar episodes, Plaintiff testified he suffers from sarcoidosis, a circulatory disease which causes painful bumps all over his body and causes him to get winded from walking and climbing stairs. T. 71-72. His left hand gets swollen frequently and becomes very painful, for which he takes Tylenol. T. 60. Plaintiff testified he wears slide-on shoes because his back pain prevents him from being able to tie his shoes. T. 70. He takes Baclofen for his back pain, which also causes him to feel sedated. T. 62-63. In addition to Seroquel and Baclofen, Plaintiff testified he is prescribed Lithium, Gabapentin, and Buspar. T. 63.

9

Plaintiff testified he occasionally cooks simple meals, such as hamburgers, goes grocery shopping with his mother's help approximately once a month, and does his laundry at a laundromat approximately every two weeks. T. 67-68. Finally, Plaintiff testified that he attends group therapy two times a week, an individual biweekly therapy session, and he participates in Alcoholics Anonymous ("AA") meetings at least four times a week. T. 77. The ALJ's contention that Plaintiff's activities of daily living are inconsistent with Dr. Brown's opinion, particularly regarding excessive absences, is not consistent with the evidence of record, and therefore is not a good reason for failing to give that opinion controlling weight. *See Miller v. Colvin*, 122 F. Supp. 3d 23, 30 (W.D.N.Y. 2015) (finding error in not affording controlling weight to treating physician's opinion where ALJ mischaracterized the record regarding the claimant's abilities).

The ALJ also stated that Dr. Brown's opinion was inconsistent with the objective clinical and diagnostic findings. Again, the ALJ failed to provide any explanation in arriving at this conclusion, which upon review, the Court finds to be unsupported by the record evidence. Consultative examiner Dr. Ransom, whose opinion the ALJ failed to consider in her determination, diagnosed Plaintiff with "marked to severe" bipolar disorder. T. 515. She opined that Plaintiff would be unable to participate in *any* activities except treatment or rehabilitation for six months, and

that Plaintiff would be moderately limited, defined as "unable to function 50% of the time," in maintaining a schedule. T. 515-16. Moreover, and contrary to the Commissioner's contention that Plaintiff routinely had normal mental status examinations, multiple mental status examinations in the medical record assessed Plaintiff with impairments including, for example, "racing thoughts," depressed mood, anxious mood, "negative ruminations," impaired insight, poor concentration, impaired judgment, impulsive judgment, perseveration, guarded affect and behavior, and "trouble with obsessions and rituals." T. 483, 485-88, 494, 497, 616, 622. This medical evidence is consistent with Dr. Brown's opinion.

Additionally, Plaintiff's medical records support the conclusion that he requires frequent treatment, and occasionally multiple appointments in one day. A review of Plaintiff's medical records shows 58 medical appointments with various providers between January 15, 2015 and June 22, 2015, including seven days when he had multiple appointments in one day. *See* T. 427-58; 473-75; 505-11; 525-66; 579-630. Evidence of frequent treatment supports a physician's conclusions regarding absenteeism. *See Citro v. Colvin*, No. 16-CV-6564 (BCM), 2018 WL 1582443, at \*13 (S.D.N.Y. Mar. 28, 2018) (treating physician's "frequent physical examinations of the plaintiff" and "his own treatment notes" supported conclusion that the plaintiff was likely to be absent from work more than three times per month).

11

Moreover, to the extent that there is evidence in the record showing that Plaintiff's mental impairments were sometimes more debilitating than others, the ALJ's opinion fails to address in any meaningful way the nature of Plaintiff's bipolar disorder and the associated variations in Plaintiff's functioning. "[A] person suffering from bipolar disorder may be vulnerable to violent mood swings resulting in better days and worse days, and that a claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every day*." *Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (internal quotation omitted and emphasis in original); *see also O'Meara v. Comm'r of Soc. Sec.*, No. 2:13-CV-227, 2014 WL 4662423, at *7 (D. Vt. Sept. 18, 2014) ("bipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment") (internal quotation omitted). Here, the ALJ failed to consider the episodic nature of Plaintiff's condition in assessing Dr. Brown's opinion, and expressly failed to consider how that factor might contribute to absenteeism.

For all the foregoing reasons, the Court finds that the ALJ failed to articulate good reasons for failing to afford controlling weight to Dr. Brown's opinion. Dr. Brown's opinion was well-supported and was consistent with the medical evidence of record. As such, the applicable regulations required the ALJ to afford it controlling weight, and the ALJ erred in not doing so.

**II. Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Remand solely for calculation and payment of benefits is appropriate where the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that additional evidence exists that might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

In this case, for the reasons set forth above, the Court finds that Dr. Brown's opinion regarding Plaintiff's non-exertional limitations was entitled to controlling weight. Accordingly, the ALJ was obligated to conclude that Plaintiff would be absent from work more than four days per month. T. 630. The VE testified that an individual who was absent from his workstation for 20 percent of the typical work week would not be able to maintain employment. T. 88-89. In light of this testimony, had Dr. Brown's opinion been afforded the proper weight, a finding of disability would have necessarily followed. Moreover, the record in this case is complete, and further development cannot reasonably be expected to support a finding that Plaintiff is not disabled. Accordingly, the Court finds that the ALJ's decision is legally erroneous and the

matter is reversed and remanded for calculation and payment of benefits.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 12) is denied, and Plaintiff's motion for judgment on the pleadings (Docket No. 9) is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                  S/Michael A. Telesca
                                            _____
                                            MICHAEL A. TELESCA
                                            United States District Judge

Dated:    May 10, 2018
             Rochester, New York